# EXHIBIT A

| | | |
|---|---|---|
| RICHARD M. SAVOIE | : | 14TH JUDICIAL DISTRICT COURT |
| VS. NO. 2019-206 H | : | PARISH OF CALCASIEU |
| BP AMOCO CHEMICAL COMPANY, CHEVRON, USA, INC., CANADIANOXY OFFSHORE PRODUCTION CO., LLOYDS OF LONDON, CENTURY INDEMNITY COMPANY, HARTFORD ACCIDENT AND INDEMNITY COMPANY; THE TRAVELERS INDEMNITY COMPANY; PACIFIC EMPLOYERS INSURANCE CO.; ACE PROPERTY & CASUALTY CO.; UNITED STATES FIRE INSURANCE COMPANY; RIVERSTONE CLAIMS MANAGEMENT; FINANCIAL AMERICAN HOLDINGS CORP.; WHITE MOUNTAINS INSURANCE GROUP, LTD; and TRINITY UNIVERSAL INSURANCE COMPANY | : | |
| | : | STATE OF LOUISIANA |
| FILED: JAN 14 2019 | : | Carole B LeBlanc<br>DEPUTY CLERK |

SCANNED JAN 25 2019

## PETITION FOR DAMAGES

**NOW INTO COURT**, through undersigned counsel, comes petitioner, RICHARD M. SAVOIE, hereinafter sometimes referred to as "Plaintiff," who is the lawful age of majority and resident of the Parish of Calcasieu, Louisiana, and files this Petition as follows:

CMS6312371
Filing Date: 01/14/2019 12:00 AM Page Count: 18
Case Number: 2019-000206
Document Name: PETITION

Made defendants herein are:

1. BP AMOCO CHEMICAL COMPANY, a corporation organized and existing under and by virtue of the State of Delaware, with a principal place of business at 150 W. Warrenville Rd., Haperville, IL 60563, and which may be served through its agent for service in the State of Louisiana, to wit: C.T. Corporation System, 3867 Plaza Tower Drive, Baton Rouge, LA 70816;

2. CHEVRON U.S.A., INC., (as Successor in Interest to UNOCAL, and Pure Oil) a corporation organized and existing under and by virtue of the State of Pennsylvania, with an agent for service in the State of Louisiana to-wit: The Prentice-Hall Corporation System, Inc., 501 Louisiana Avenue, Baton Rouge, LA 70802;

3. CANADIANOXY OFFSHORE PRODUCTION CO. (as successor to Cities Service Refining Corporation and Cities Service Oil Company), hereinafter referred to as "Cities Service," a corporation organized and existing under and by virtue of the laws of the State of Delaware, who may be served via long-arm statute at its principal place of business, to-wit: 945 Bunker Hill Road, Suite 1400, Houston, TX 77024;

01-14-2019
126,252
Baggett McCall
$1,709.00
CL

4. LLOYDS OF LONDON, a foreign corporation licensed to do and doing business within the State of Louisiana which may be served pursuant to the Louisiana Long-Arm Statute, through Mr. Thomas J. Quinn, Mendes & Mount, 750 Seventh Avenue, New York, NY 10019. This defendant is a Louisiana domiciliary for purposes of this case because of the domicile of its living insureds as well as its deceased insureds, *Thompson v. Radosta,* 895 F. Supp.113 (E.D. La. 1995); *Adams v. Ford Motor Company*, (W.D., 2012 WL 5877957);

5. CENTURY INDEMNITY COMPANY, (as successor to CCI Insurance Company and Insurance Company of North America), a foreign corporation licensed to do and doing business within the State of Louisiana and may be served through the Secretary of State, State of Louisiana. This defendant is a Louisiana domiciliary for purposes of this case because of the domicile of its living insureds as well as its deceased insureds, *Thompson v. Radosta,* 895 F. Supp.113 (E.D. La. 1995); *Adams v. Ford Motor Company*, (W.D., 2012 WL 5877957); and

6. HARTFORD ACCIDENT AND INDEMNITY COMPANY, a foreign corporation licensed to do and doing business within the State of Louisiana which may be served through the Secretary of State, State of Louisiana, who is a Louisiana domiciliary for purposes of this case because of the domicile of its living insureds as well as its deceased insureds, *Thompson v. Radosta,* 895 F. Supp.113 (E.D. La. 1995); *Adams v. Ford Motor Company*, (W.D., 2012 WL 5877957);

7. THE TRAVELERS INDEMNITY COMPANY (f/k/a THE AETNA CASUALTY AND SURETY COMPANY), a foreign corporation licensed to do and doing business within the State of Louisiana which may be served through the Secretary of State, State of Louisiana, who is a Louisiana domiciliary for purposes of this case because of the domicile of its living insureds as well as its deceased insureds, *Thompson v. Radosta,* 895 F. Supp.113 (E.D. La. 1995); *Adams v. Ford Motor Company*, (W.D., 2012 WL 5877957); and

8. PACIFIC EMPLOYERS INSURANCE COMPANY, a foreign corporation licensed to do and doing business within the State of Louisiana which may be served through the Secretary of State, State of Louisiana, who is a Louisiana domiciliary for purposes of this case because of the domicile of its living insureds as well as its deceased insureds, *Thompson v. Radosta,* 895 F. Supp.113 (E.D. La. 1995); *Adams v. Ford Motor Company*, (W.D., 2012 WL 5877957);

9. ACE PROPERTY AND CASUALTY INSURANCE COMPANY, a foreign corporation licensed to do and doing business within the State of Louisiana which may be served through the Secretary of State, State of Louisiana, who is a Louisiana domiciliary for purposes of this case because of the domicile of its living insureds as well as its deceased insureds, *Thompson v. Radosta,* 895 F. Supp.113 (E.D. La. 1995); *Adams v. Ford Motor Company*, (W.D., 2012 WL 5877957);

10. UNITED STATES FIRE INSURANCE COMPANY, a foreign corporation licensed to do and doing business within the State of Louisiana which may be served through the Secretary of State, State of Louisiana, who is a Louisiana domiciliary for purposes of this case because of the domicile of its living insureds as well as its deceased insureds, *Thompson v. Radosta,* 895 F. Supp.113 (E.D. La. 1995); *Adams v. Ford Motor Company*, (W.D., 2012 WL 5877957);

11. RIVERSTONE CLAIMS MANAGEMENT, a corporation organized and existing under and by virtue of the State of New Hampshire, which may be served via Louisiana Long-Arm Statute at its principal place of business at 250 Commercial St., Ste. 5000, Manchester, NH 03101, who is a Louisiana domiciliary for purposes of this case because of the domicile of its living insureds as well as its deceased insureds, *Thompson v. Radosta,* 895 F. Supp.113 (E.D. La. 1995); *Adams v. Ford Motor Company*, (W.D., 2012 WL 5877957);

12. FINANCIAL AMERICAN HOLDINGS CORP. (as successor to Industrial Underwriters Insurance Company), a corporation organized and existing under and by virtue of the State of Delaware, which may be served via Louisiana Long-Arm Statute through its Agent for Process, Corporation Service Company, 251 Little Falls Drive, Wilmington, DE 19808, who is a Louisiana domiciliary for purposes of this case because of the domicile of its living insureds as well as its deceased insureds, *Thompson v. Radosta*, 895 F. Supp.113 (E.D. La. 1995); *Adams v. Ford Motor Company*, (W.D., 2012 WL 5877957);

13. WHITE MOUNTAINS INSURANCE GROUP, LTD (as successor to Central National Insurance Company), a corporation organized and existing under and by virtue of the State of Delaware, which may be served via Louisiana Long-Arm Statute through its Agent for Process, United States Corporation Company, 251 Little Falls Drive, Wilmington, DE 19808, who is a Louisiana domiciliary for purposes of this case because of the domicile of its living insureds as well as its deceased insureds, *Thompson v. Radosta*, 895 F. Supp.113 (E.D. La. 1995); *Adams v. Ford Motor Company*, (W.D., 2012 WL 5877957; and

14. TRINITY UNIVERSAL INSURANCE COMPANY, a foreign corporation licensed to do and doing business within the State of Louisiana which may be served through the Secretary of State, State of Louisiana, who is a Louisiana domiciliary for purposes of this case because of the domicile of its living insureds as well as its deceased insureds, *Thompson v. Radosta*, 895 F. Supp.113 (E.D. La. 1995); *Adams v. Ford Motor Company*, (W.D., 2012 WL 5877957);

Hereinafter sometimes referred to collectively as "defendants."

2.

This claim and lawsuit is being brought for relief under the general maritime laws of the United States and under 46 USC Section 688, *et seq.* commonly referred to as the Jones Act. This claim and lawsuit is being brought in Louisiana State Court under the "Savings to Suitors" clause. This claim and lawsuit is specifically designated as one in admiralty and general maritime law. In addition, this is an executive officer claim solely under Louisiana law for injurious exposure prior to October 1, 1976. Finally, it is a third party premise liability claim under Louisiana law.

3.

In 1968, Mr. Savoie was employed by Augenstein Construction. In 1968, while employed with Augenstein and before 1968, Mr. Savoie worked at Cities Service ("Cities") refinery in Lake Charles, Louisiana. Between 1968 and 1970, Mr. Savoie was employed by Cameron Construction and/or Crain Brothers, Inc.("Crain") as a contractor at various Amoco and Pure Oil gathering stations and small refineries. Between 1970 and 1972, Richard M. Savoie was employed as a direct employee of Union Oil Company of California (hereinafter referred to as "UNOCAL") at its various Louisiana

facilities, including those located in Calcasieu Parish, LA. Between 1972 and 1974, Mr. Savoie was employed as a direct employee of Tennessee Gas Pipeline as an operator based in Bell City, Calcasieu Parish, Louisiana.

4.

While in the course and scope of Mr. Savoie's employment with Augenstein Construction, Crain, UNOCAL, and Tennessee Gas & Oil and at facilities owned by Cities, Amoco and Pure, he was occupationally exposed to benzene, 1, 3 butadiene, and other carcinogens and toxic chemicals. As Cities, UNOCAL, Amoco, Pure and Tennessee Gas & Oil knew and their executive officers identified below knew, or, in the exercise of due care, should have known, these chemicals were injurious and damaging to the bodies of Mr. Savoie and other similarly situated workers. These injuries invariably occurred at the time of, or shortly following inhalation, setting in motion a carcinogenic metabolic process that began, for example, with the metabolism of benzene into phenol and which process, although not certain to result in cancer, certainly put heavily exposed workers like Mr. Savoie at greatly increased risk of developing cancer later in life. Specifically, long before Mr. Savoie even went to work for Augenstein, UNOCAL, Tennessee Gas & Oil and/or Crain, benzene had been shown to cause cancer of the blood and blood forming organs. Cities, Amoco, Pure, UNOCAL and Tennessee Gas & Oil knew this and their executive officers knew, or in the exercise of due care, should have known it. Additionally, and without regard to whether benzene was the causal agent involved, various types of cancer and other diseases of the blood and blood forming organs have repeatedly been shown to occur at increased rates among workers who, like Mr. Savoie, were exposed to the processes and chemicals employed in the manufacture of the chemical and petroleum products that Cities, UNOCAL, Tennessee Gas & Oil, Amoco, and/or Pure manufactured at their Calcasieu Parish and Louisiana facilities.

5.

Mr. Savoie specifically alleges that the injuries and damage that he sustained before October 1, 1976 were substantial contributing causes of the Multiple Myeloma he developed many years later and which was diagnosed in August, 2017.

6.

At all times pertinent to this lawsuit, Mr. Savoie was unaware of the nature and extent of the toxic and carcinogenic hazard posed by the chemicals to which he was exposed while employed and/or working at Cities, UNOCAL, Tennessee Gas & Oil, Pure and/or Amoco's Louisiana facilities. However, Cities, Pure, UNOCAL, Tennessee Gas & Oil and/or Amoco did know and their Executive Officers knew or should have known of the carcinogenic nature of these chemicals, Mr. Savoie's exposures thereto, and the unreasonably dangerous nature of the chemicals Mr. Savoie was required to work with or around.

7.

At all times relevant to this lawsuit, Cities, Pure, UNOCAL, Tennessee Gas & Oil and/or Amoco were engaged in the business of manufacturing, selling, distributing and/or placing into the stream of commerce, toxic and/or carcinogenic products and chemicals, and used many such chemicals in Mr. Savoie's workplace, including, but no limited to benzene, 1, 3 butadiene, and other carcinogenic and toxic chemicals.

8.

Defendants, CENTURY INDEMNITY COMPANY and LLOYDS OF LONDON were the liability insurance carriers for Cities Service and its executive officers during the period of time when Richard M. Savoie was employed at Cities Service facilities in Calcasieu Parish and, as a result, are jointly and severally liable unto the Plaintiff for the damages he claims in this petition.

9.

Defendants, HARTFORD ACCIDENT AND INDEMNITY COMPANY, along with its various entities (First State Insurance Company, Twin City Fire Insurance Co., New England Reinsurance Corp., Security National Insurance Co., and Valley Insurance Company.), ACE PROPERTY & CASUALTY CO., PACIFIC EMPLOYERS INSURANCE CO., FINANCIAL AMERICAN HOLDINGS CORP. (as successor to Industrial Underwriters Insurance Company), RIVERSTONE CLAIMS MANAGEMENT, WHITE MOUNTAINS INSURANCE GROUP LTD.(as successor to Central National Insurance Company Of Omaha), and TRINITY UNIVERSAL INSURANCE CO., were

the comprehensive general and excess liability insurance carriers for, and, under Louisiana's Direct Action Statute, in this case stand in the shoes of UNOCAL and its executive officers during the periods of time in which Plaintiff was employed at the UNOCAL as and "I.E. Technician" in 1970 through 1972, including Calcasieu Parish (e.g., the gathering stations/small refineries located on Matilda Gray's land in Ged, Louisiana.) and are jointly and severally liable unto Plaintiff for the damages sustained by him.

10.

Defendant, THE TRAVELERS INDEMNITY COMPANY f/k/a THE AETNA CASUALTY AND SURETY COMPANY (individually and as successor to St. Paul Mercury Insurance Co.), was the comprehensive general and excess liability insurance carriers for, and, under Louisiana's Direct Action Statute, in this case stand in the shoes of Tennessee Gas & Oil Company and its executive officers during the periods of time in which Plaintiff was employed at Tennessee Gas & Oil Company as an operator at the facility behind the Conoco gathering station and refineries at Grand Chenier, in Cameron Parish, Louisiana, and on the Tennessee Gas pipeline that ran between Grand Chenier and Kinder, Louisiana and traversed Calcasieu Parish, Louisiana, including various metering stations and the Tennessee Gas facility in Bell City, Calcasieu Parish, Louisiana and is jointly and severally liable unto Plaintiff for the damages sustained by him.

11.

While Plaintiff was employed by Cameron Construction and Crain Brothers, Inc., he was exposed to benzene and other carcinogenic products at various gathering stations and small refineries within the care, custody, and control of both Amoco Oil Company and Pure Oil (UNOCAL), which exposures substantially contributed in causing his cancer. Plaintiff alleges that Amoco and UNOCAL are both strictly liable under the law as it existed at the time of his exposure and also liable for its negligence for the same reasons set forth below in Plaintiffs allegations against executive officers of UNOCAL and Tennessee Gas and Oil.

12.

The cause of action asserted in this lawsuit accrued before the 1988 amendment of LA R.S. 22:655 (renumbered as LSA-R.S. 22:1269), which statute is not retroactive, but which, *after* its effective date, sometimes requires that suit be brought against both the insured and the company providing coverage under Louisiana's Direct Action Statute. See Acts 1988, No. 934, §2, and which statute provides, "This Act shall become effective on January, 1, 1989 and shall apply to all causes of action accruing on or after that date." Similarly, Plaintiff also specifically alleges that he sustained repeated, substantial injurious exposures prior to the effective date of the Louisiana Products Liability Act and that the law in effect prior to the effective date of that Act applies and, further, that prior to the advent of the Louisiana Products Liability Act and the effective date of said Act, Plaintiff was vested in the cause of action asserted in this lawsuit as a result of his pre-act injurious exposures. Thus, Plaintiff alleges that, although he was unaware of the injurious exposures he was sustaining, Plaintiff received "repeated tortious exposures" to hazardous chemicals and that his cause of action accrued prior to the previously described changes to Louisiana's Direct Action Statute and prior to the effective date of the Louisiana Products Liability Act, although the cancer that occurred as a result of these exposures did not manifest itself until years later.

13.

This petition is filed within one year of Plaintiff discovering that his disease was caused by his previous occupational exposure to Cities, Pure, UNOCAL, Tennessee Gas & Oil Company, and/or Amoco Chemical Company's toxic and carcinogenic chemicals and his discovery that defendants herein were liable for the damages plead herein. None of the defendants or their Executive Officers ever informed Plaintiff of the nature and extent of the carcinogenic hazard posed by his occupational exposure or that his cancer might be related to his previous occupational exposures. It was not until Petitioner consulted an attorney within a year of filing this lawsuit, that he learned of the potential relationship between his previous occupational exposures and his cancer. Prior to this date, Petitioner had no knowledge or belief that his cancer was related to his employment or that he had been injured in the course of his previous employment.

14.

On information and belief, the following persons were executive officers of UNOCAL during all or part of Plaintiff's employment with UNOCAL were and are at all pertinent times domiciled in the State of Louisiana:

a. Ed Richard, General Operations Manager, Abbeville, Louisiana;

b. Gerard Bore, Offshore Operations Manager, Lafayette, Louisiana;

c. Donald "Donnie" Anderson, Technical Group Manager, Abbeville, Louisiana;

The aforenamed are hereinafter sometimes referred to collectively as "UNOCAL executive officers."

15.

On information and belief, the following persons were executive officers of Tennessee Gas & Oil Company during all or part of Plaintiff's employment with Tennessee Gas & Oil Company were and are at all pertinent times domiciled in the State of Louisiana:

a. Rod Cameron, Plant Supervisor, Lake Charles, Louisiana;

b. Pat Doland, Lead Operator, Grand Chenier, Louisiana;

c. Unknown Name, Safety Instructor for Kinder Pipeline;

The aforenamed are hereinafter sometimes referred to collectively as "Tennessee Gas & Oil Company executive officers."

16.

On information and belief, the following were executive officers of Cities Service, at all times pertinent to this lawsuit, were domiciled in the State of Louisiana (unless otherwise designated):

a. G. L. Mateer, President, Cities Service;

b. H. R. Smith, Vice President and General Manager, Cities Service;

c. M. F. Wirges, Assistant General Manager, Cities Service;

d. J. S. Brendler, Plant Manager, Cities Service;

e. Bert Delaune, Safety Director, Cities Service;

f. W. H. Price, Vice President, Cities Service;

g. M. B. Carlton, Industrial Relations, Cities Service;

h. J. H. Olehy, Plant Manager, Cities Service;

i. R. T. Miller, Safety Engineer, Cities Service;

j. Desmond Colvin, Safety Director, Cities Service;

k. Mark D. Wentz, Safety Director, Cities Service;

l. Dr. J. W. Crookshank, Medical Director, Cities Service;

m. Gordon Wooster, Industrial Relations, Cities Service;

n. G. R. Griswold, Plant Manager, Cities Service;

o. Dr. Veronica Yates, Medical Director, Cities Service (non-resident);

p. W. A. Neeley, Industrial Relations Manager, Cities Service;

q. Dr. J. W. Swafford, Medical Director, Cities Service;

r. Dr. John Swanson, Medical Director, Cities Service (non-resident); and

s. Robert W. Rohrman, Cities Service.

The aforenamed are hereinafter sometimes referred to collectively as "Cities Service executive officers."

17.

UNOCAL, Tennessee Gas & Oil Company, and Cities Service delegated to their respective executive officers named in the preceding paragraphs their responsibility to provide Richard M. Savoie with proper supervision, safety instruction, and warnings concerning hazardous conditions in his workplace, and, generally, with a safe place to work. Moreover, these executive officers actually undertook to provide such operational supervision, instructions, and warnings. Plaintiff specifically alleges that the above named executive officers had the following responsibilities delegated to them by their employer or actually undertook to perform the following responsibilities:

a. Inspection, approval, and supervision of the work of Plaintiff and his co-employees and their working environment;

b. To see that proper safety rules were adopted, promulgated, and enforced as concerned the use of toxic substances, the use of respiratory protection devices and other protective equipment;

c. To see that Plaintiff and his co-employees performed the duties pertaining to their work in a proper, safe, and workmanlike manner;

d. To see that Plaintiff and his co-employees used safe and sound work practices and procedures;

e. To make health and hygiene decisions on any and all questions regarding the use of toxic substances, the use of respiratory protection devices, engineering controls, monitoring, and employee safety;

f. To keep abreast of state-of-the-art knowledge as it pertained to the dangers potentially associated with exposure to hazardous chemicals, safety and industrial hygiene and to pass that information on as necessary to provide Plaintiff and his co-employees with a safe place to work;

g. To provide adequate warnings, instructions, medical examinations and monitoring, atmospheric monitoring, engineering controls, safety equipment, ventilation, and breathing apparatus, as necessary in order to prevent Plaintiff from being harmed by his exposure to toxic chemicals in the environment in which he was required to work;

h. To make certain that Plaintiff and other employees at the facilities for which they were responsible were provided a safe working environment free from injurious exposure to toxic chemicals;

i. To comply with applicable state and federal regulations regulating workplace exposures (including, but not limited to, those regulations promulgated by the U.S. Department of Labor pursuant to the Walsh-Healey Public Contracts Act and the Occupational Safety & Health Act) and to provide Plaintiff with the protections afforded by those regulations;

j. To test Plaintiff's work environment for the presence of hazardous chemicals; and

k. To inspect Plaintiff's work environment in order to assure that adequate warnings, instructions, monitoring, medical examinations and monitoring, engineering controls, safety equipment, ventilation, and breathing apparatus, etc. were being provided and safe work practices employed as necessary in order to prevent Plaintiff from being harmed by his exposure to toxic chemicals in the environment in which he was required to work;

l. To responsibly delegate authority;

m. To audit the performance of those to whom they delegated authority;

n. To audit work practices and procedures employed in Plaintiff's workplace;

o. To provide Plaintiff with a safe place to work through the formulation, implementation, and enforcement of policies and of plans for all phases of accident and injury prevention.

p. To protect plaintiff from the chronic toxicity (including carcinogenic effects) of the chemicals he was required to work with and around on a daily basis.

q. Not to conceal from plaintiff and his co-workers important information relating to the toxicity of the chemicals they were required to work with and around or of measures necessary to be taken in order to prevent their injurious exposures to those substances.

18.

Not only did the above identified executive officers have the duties and responsibilities set forth in the preceding paragraph, they did in fact actually undertake on an operational basis to perform said duties and fulfill said responsibilities. However, they negligently failed to carry out those undertakings and assumed duties in the manner set forth in the following paragraphs. The above named executive officers knew or should have known of the unreasonably dangerous nature of the hazards posed by Plaintiff's injurious exposure to carcinogenic chemicals, and knew or should have known of the dangers to Plaintiff's health caused by working in an atmosphere polluted with hazardous chemicals without proper safeguards. The above named executive officers knew or should have known that the injuries sustained by Plaintiff could or would have been avoided by the use of proper safety procedures and safeguards.

19.

The executive officers identified in this petition were responsible for and did in fact formulate and administer safety policies and practices that to did, to some extent, address explosive, flammability, and even some *acute* health hazards posed by the chemicals present at their facilities and, should have, but, as a result of their negligent disregard for the *chronic* toxicity of chemicals employed those facilities, the executive officers did not protect plaintiff and his coworkers from chronic health hazards posed by those chemicals, including chemicals that caused cancer.

20.

There is no question that executive officers identified in this petition had the duty to protect plaintiff from injurious and damaging exposure to the toxic substances he was required to work with and around. UNOCAL, Tennessee Gas & Oil Company, and/or Cities Service specifically involved various levels of management - including Plant Managers, Assistant Plant Managers, Directors of Personnel and Process Safety, Safety, Safety Technicians, Industrial Hygienists, and Industrial Hygiene Technicians, as well as department heads and supervisors concerned with particular manufacturing processes and particular areas at their Louisiana facilities - in safety and health program, including specifically chemical safety.

21.

Neither is there any question that the executive officers identified in this petition knew or should have been aware of the extreme hazard to Plaintiff's health posed by his routine exposures to UNOCAL, Tennessee Gas & Oil Company, and Cities Service's toxic chemicals. To give a single example, the executive officers routinely conducted audits that sometimes took days to complete and every area of the facility was inspected. Department heads and supervisors of the various areas of were consulted, notes were taken, certain potential problems were identified and reviewed by the group, and certain corrective actions were taken, almost all of which related to the prevention of traumatic injury, fire, and explosions. To the extent corrective actions were taken with regard to chemical exposure, they were taken only with regard to the acute, but not the chronic, hazards posed by those exposures. As a result of this concerted effort on the part of management and occupational health and safety professionals, the UNOCAL, Tennessee Gas & Oil Company, and Cities Service executive officers inspected and otherwise became aware, or at least should have become aware, of the hazards to Plaintiff's health posed by the reckless manner in which toxic chemicals were used in his workplace. Had the executive officers carried out their delegated duties and implemented an occupational health program in a reasonable and responsible manner, they could only have been aware of the abominable working conditions to which Plaintiff was subjected on a daily basis.

22.

The executive officers identified in this petition negligently failed in the performance of their delegated responsibilities and actual undertaking to provide Plaintiff with a safe place to work in the following particulars:

a. Failing to test, or adequately test, Plaintiff's work environment for the presence of hazardous chemicals and to take corrective action when those chemicals were present at levels;

b. Failing to provide adequate periodic medical examinations and medical monitoring to Plaintiff;

c. Failing to properly ventilate the areas in which Plaintiff was required to work;

d. Failing to provide proper safety appliances to Plaintiff;

e. Failing to formulate policies and adopt plans, practices, procedures and to provide supervision necessary for the adequate protection of Plaintiff, and/or to responsibly delegate authority to perform these tasks;

f. Failing to warn Plaintiff of the dangers and/or risks posed by the polluted atmosphere in which he was required to work or even instruct him as to any methods to at least minimize the horrendous exposures to which he was sustaining, often on a daily basis;

g. Failing to enforce applicable safety rules after such rules were actually adopted;

h. Failing to keep abreast of the scientific and engineering knowledge regarding the dangers of and protection from occupational exposures such as those present in plaintiff's working environment or, when such knowledge was obtained, to share such knowledge with those most in the need of it for their own protection, including, but not limited to the plaintiff;

i. Failing to properly supervise operations and audit work practices and procedures employed in Plaintiff's workplace;

j. Failing to inspect Plaintiff's work environment in order to assure that adequate warnings, instructions, monitoring, medical examinations and monitoring, engineering controls, safety equipment, ventilation, and breathing apparatus, etc. were being provided and that safe work practices were being employed as necessary in order to prevent Plaintiff from being harmed by his exposure to toxic chemicals;

k. Failing to responsibly delegate authority sand to audit the performance of those to whom they delegated authority;

l. Using benzene, a long recognize occupational carcinogen, and other toxic chemicals for routine tasks such as cleaning tools;

m. Routinely causing and allowing Plaintiff to be exposed to hazardous levels of benzene and other chronic toxins present in the areas of their facilities where plaintiff and his coworkers were required to work without adequate protection to guard against their chronic toxicity;

n. Commencing and continuing operations which were under their control and supervision when they knew or should have known that such operations would cause Plaintiff and his co-employees to be exposed to a grossly polluted atmosphere without protection on a daily basis;

o. Failing to abide by applicable state and federal regulations regulating workplace exposure (including, but not limited to, those regulations promulgated by the U.S. Department of Labor pursuant to the Walsh-Healey Public Contracts Act and to the Occupational Safety and Health Act) and to afford plaintiff with the protections provided by those regulations;

p. Concealing from, or otherwise failing to reveal to, plaintiff and his coworkers the known toxic hazards of the chemicals they were required to work with, measures to guard against their chronic toxicity, and even the fact that, even though they might go home every day with no ill effects, they were working in an environment deposed an extreme risk to their future health, including the risk of developing cancer; and

q. Other acts of negligence which may be discovered subsequent to the filing of this lawsuit and/or proven at trial.

23.

To the extent the executive officers took any steps to protect Plaintiff from toxic chemicals, the executive officers were concerned only with acute hazards posed by those chemicals - such as fire, explosions, burns, and asphyxiation. However, despite their knowledge of chronic hazards (including cancer posed by chemicals such as benzene, 1, 3 butadiene, asbestos, polynuclear aromatics and other in carcinogenic chemicals present at their facilities) and at least in part based upon the executive officers' common financial interest in their employers' continued uninterrupted, unimpaired, and profitable production of toxic chemicals, the executive officers chose or neglected to take even the most basic steps to prevent plaintiff from being overexposed to toxic chemicals.

24.

With the information, assistance, and guidance provided by corporate employees and locally employed medical professionals that possessed sophisticated knowledge of toxicology, epidemiology, occupational medicine, and occupational health & safety, and not all of whom are known at this time, the UNOCAL, Tennessee Gas & Oil Company, and Cities Service executive officers based at the Louisiana facilities were responsible for, and did formulate and administer, safety policies and practices that, to some extent, addressed acute hazards posed by chemicals present the Louisiana facilities and, should have, but, as a result of their negligent disregard for the chronic toxicity of chemicals employed that facility, did not, protect the Plaintiff from the chemicals that caused his cancer. The foregoing negligence on the part of the above named executive officers was a factual, proximate, and legal cause of damages to Plaintiff.

25.

Although Plaintiff knew he was working with chemicals that posed certain acute hazards like fire, poisoning and suffocation, he was told absolutely nothing about the chronic toxicity of those chemicals including risk of cancer.

26.

Between 1970 and 1972 Plaintiff worked as a Jones Act Seaman for UNOCAL. He worked on vessels in navigation and/or fleet of vessels in navigation. He contributed to the function of those vessels and contributed to the accomplishment of the mission of those vessels. While on the vessels, the Plaintiff's duties included working on electrical and maintenance. His employer UNOCAL is liable under the Jones Act for the following:

a. Failing to ensure the Plaintiff was properly trained relating to hazardous exposure such as benzene;

b. Failing to provide Plaintiff with personal protective equipment to eliminate and/or reduce his benzene exposure;

c. Failure to warn Plaintiff concerning the hazards of his work place, including but not limited to hazards related to benzene exposure;

e. Failure to medically monitor Plaintiff for health hazards in the work place, including but not limited to benzene exposure;

f. Failing to implement state of the art industrial hygiene practices to reduce and/or prevent Plaintiff's benzene exposure; and

g. Failing to implement engineering controls to reduce and/or eliminate Plaintiff's benzene exposure;

The foregoing acts of negligence were a substantial factor in causing Plaintiff to contract cancer. In addition, the foregoing acts of negligence constituted causation under the standard for causation under the Jones Act.

27.

Richard M. Savoie's damages as a result of his contraction of multiple myeloma can be itemized as follows:

A. Past, present, and future physical pain and suffering;

B. Past, present, and future mental pain and suffering;

C. Past, present, and future loss of enjoyment of life;

D. Past, present, and future disability; and

E. Past, present, and future medical bills.

28.

All defendants are liable individually, jointly and *in solido*.

Defendants, BP AMOCO CHEMICAL COMPANY, CHEVRON USA, INC., CANADIANOXY OFFSHORE PRODUCTION CO. (as successor to Cities Service Refining Corporation and Cities Service Oil Company), LLOYDS OF LONDON, CENTURY INDEMNITY COMPANY, HARTFORD ACCIDENT AND INDEMNITY COMPANY, THE TRAVELERS INDEMNITY COMPANY (f/k/a THE AETNA CASUALTY AND SURETY COMPANY), ACE PROPERTY & CASUALTY CO., PACIFIC EMPLOYERS INSURANCE CO., FINANCIAL AMERICAN HOLDINGS CORP. (as successor to Industrial Underwriters Insurance Company), RIVERSTONE CLAIMS MANAGEMENT, WHITE MOUNTAINS INSURANCE GROUP, LTD. (as successor to Central National Insurance Company of Omaha), UNITED STATES FIRE INSURANCE COMPANY, and TRINITY UNIVERSAL INSURANCE CO., are liable for the damages described above in amounts reasonable under the premises.

WHEREFORE, Plaintiff, RICHARD M. SAVOIE, prays that defendants, BP AMOCO CHEMICAL COMPANY, CHEVRON USA, INC., CANADIANOXY OFFSHORE PRODUCTION CO. (as successor to Cities Service Refining Corporation and Cities Service Oil Company), LLOYDS OF LONDON, CENTURY INDEMNITY COMPANY, HARTFORD ACCIDENT AND INDEMNITY COMPANY, ACE PROPERTY & CASUALTY CO., PACIFIC EMPLOYERS INSURANCE CO., FINANCIAL AMERICAN HOLDINGS CORP. (as successor to Industrial Underwriters Insurance Company), RIVERSTONE CLAIMS MANAGEMENT, WHITE MOUNTAINS INSURANCE GROUP, LTD. (as successor to Central National Insurance Company of Omaha), UNITED STATES FIRE INSURANCE COMPANY, TRINITY UNIVERSAL INSURANCE CO., and THE TRAVELERS INDEMNITY COMPANY (f/k/a THE AETNA CASUALTY AND SURETY COMPANY), be served with a copy of this Petition and be cited to answer same, and after due proceedings had there be judgment in favor of Plaintiff, RICHARD M. SAVOIE, and against defendants, individually, jointly and *in solido*, BP AMOCO CHEMICAL COMPANY, CHEVRON USA, INC., CANADIANOXY OFFSHORE PRODUCTION CO. (as successor to Cities Service Refining Corporation and Cities Service Oil Company), LLOYDS OF LONDON, CENTURY INDEMNITY COMPANY, HARTFORD ACCIDENT AND INDEMNITY COMPANY, ACE PROPERTY &

CASUALTY CO., PACIFIC EMPLOYERS INSURANCE CO., FINANCIAL AMERICAN HOLDINGS CORP. (as successor to Industrial Underwriters Insurance Company), RIVERSTONE CLAIMS MANAGEMENT, WHITE MOUNTAINS INSURANCE GROUP LTD. (as successor to Central National Insurance Company of Omaha), UNITED STATES FIRE INSURANCE COMPANY, and TRINITY UNIVERSAL INSURANCE CO., and THE TRAVELERS INDEMNITY COMPANY (f/k/a THE AETNA CASUALTY AND SURETY COMPANY), for all damages and compensation in amounts reasonable under the premises, which the evidence may show proper at the time of trial, together with all costs of these proceedings, any applicable penalties, and legal interest from the date of judicial demand until paid, legal interest from the date of exposure under the Jones Act, and for all other relief as the law and equity may permit.

Respectfully submitted,

WELLS T. WATSON, #20406
WILLIAM B. BAGGETT, JR., #1217
BAGGETT MCALL BURGESS
WATSON & GAUGHAN, LLC
3006 Country Club Road
Post Office Drawer 7820
Lake Charles, LA 70605
(337) 478-8888 / (337) 478-8946 Facsimile

**PLEASE SERVE THE FOLLOWING:**

BP AMOCO CHEMICAL COMPANY
Through its Agent for Process:
C.T. Corporation System
3867 Plaza Tower Drive
Baton Rouge, LA 70816

CHEVRON U.S.A., INC
Through its Agent for Process:
The Prentice-Hall Corporation System, Inc.
501 Louisiana Avenue
Baton Rouge, LA 70802

ACE PROPERTY AND CASUALTY INSURANCE COMPANY
Through the Secretary of State
State of Louisiana

CENTURY INDEMNITY COMPANY
Through the Secretary of State
State of Louisiana

HARTFORD ACCIDENT AND INDEMNITY COMPANY
Through the Secretary of State
State of Louisiana

PACIFIC EMPLOYERS INSURANCE COMPANY
Through the Secretary of State
State of Louisiana

THE TRAVELERS INDEMNITY COMPANY
(f/k/a THE AETNA CASUALTY AND SURETY COMPANY),
Through the Secretary of State
State of Louisiana

TRINITY UNIVERSAL INSURANCE COMPANY
Through the Secretary of State
State of Louisiana

UNITED STATES FIRE INSURANCE COMPANY
Through the Secretary of State
State of Louisiana

**THE FOLLOWING WILL BE SERVED PURSUANT**
**TO LOUISIANA LONG-ARM STATUTE**

CANADIANOXY OFFSHORE PRODUCTION CO.
945 Bunker Hill Road, Suite 1400
Houston, TX 77024

LLOYDS OF LONDON
Mr. Thomas J. Quinn
Mendes & Mount
750 Seventh Avenue
New York, NY 10019

RIVERSTONE CLAIMS MANAGEMENT
250 Commercial St., Ste. 5000
Manchester, NH 03101

FINANCIAL AMERICAN HOLDINGS CORP.
Through its Agent for Service:
Corporation Service Company
251 Little Falls Drive
Wilmington, DE 19808

WHITE MOUNTAINS INSURANCE GROUP, LTD
Through its Agent for Service:
United States Corporation Company
251 Little Falls Drive
Wilmington, DE 19808